Mathews, J.
delivered the opinion of the court. In this case, the plaintiff sues to recover a house and lot described in his petition. The written evidences of his title, are, a deed of sale from Copelly, his reputed father, to one Bony, and a deed of gift from the latter to him; both executed before a notary public, on the 24th of December, 1787. The defendant, who has possession of the disputed premises, sets up a title derived from the same original proprietor, Copelly, sen., who sold, conveyed and delivered the same to one De-faucheur, by authentic act, executed on the 6th of September, 1817, who, on the 18th of May, 1818, sold to the defendant by asimilar act of sale. Other evidence in the cause, supported by written documents and oral testimony, shews that Copelly the elder, under whom both parties to this suit claim title, was, in the year 1794, in embarrassed circumstances, and that he filed his bilan, in Avhich no claim is made to the property, the subject of the present contest; that he and a free negro woman, called Rose Grondil,the mother of the plaintiff, and concubine of his father, remained in possession of said house and lot, either both together, or one of them, up to the year *668 1817, the date of the sale to Defaucheur; that , , during this period, Copelly, the father, ímpro-ved the lot by buildings and repairs, for which paj(j ouj. own Rose paid taxes on the property, as her own, for several years; and the plaintiff occupied and used a small house thereon as a blacksmith shop, during some time. It is agreed that Copelly, sen., paid off and discharged all his debts.
Judgment being for the defendant in the court below, the plaintiff appealed.
He claims a reversal of said judgment, and that the property sued for should be here adjudged to him; relying on the validity and strength of his title, his own possession, and that of his mother. In support of the judgment of the court a quo, the appellee assumes three principal grounds of defeuce : 1. That the acts, both of sale to Bony, and donation to the appellant, are feigned, simulated and fraudulent. 2. That they did not convey the property, and transfer it in full dominion, for want of delivery to the first vendee, and also for want of acceptance and delivery under the act of donation. 3. That the plaintiff’s action is barred by the prescription of 30 years, &c.
The possession of Copelly, sen., appears not *669 to have been entire and exclusive, during ° the whole time which elapsed from the date of the sale and donation in 1787, until the last sale in 1817. Rose Grondil, the mother of the plaintiff lived in the house, and paid taxes for it as her own. Copelly, jun., also occupied a blacksmith shop on the lot. At the period of commencing this action, in February, 1819, it appears that he was about 32 or 33 years old. When he acquired title by donation, it is stated in the act, that he was of the age of 18 months. Prescription could not affect his rights during his minority, unless it be that of the longest time, which begins to operate on the claim of minors, only after they have arrived at the age of puberty, (admitting that it can in any case affect them.) On this view of the subject, we are of opinion that the plaintiff’s action is not barred by prescription.
To shew that the sale to Bony, and the donation from him to the appellant, are feigned, simulated and fraudulent, no evidence is offered except the record of the proceedings which took place in 1794, on a charge of fraud against Copelly, sen., in relation to his conduct as an insolvent debtor; and the cir *670 cumstance of his still remaining in possession of the property, after said sale and donation. Whatever might be our opinion as to the nul]¡^y (y,ese deeds, on the ground of simulation and fraud between the plaintiff and creditors of Copelly; between the parties to the present contest, it is believed that no legal evidence has been adduced, sufficient to destroy their validity, on account of these alleged defects. As to fraud, there certainly is no foundation for it, after admitting that the vendor has paid all his debts.
Having thus disposed of prescription and simulation; we must take into consideration the questions which relate to acceptance and delivery; believing that on a just interpretation of the Spanish laws on these subjects, depend the claims and rights of the parties litigant.
In examining these questions, it is proper to commence with that which relates to the defect of title, said to have originated in the want of delivery of the property, under the sale of Copelly to Bony, the donor of the plaintiff
The law 50th, of tit. 5, Part. 5, on this subject, seems to be so clear, in giving a pre *671 ference in rem, to the last of two purchasers of the same thing, to whom it has been delivered, as to leave neither doubt nor difficulty in the case, but lead directly to a conclusion favourable to the pretentions of the defendant. Opposed to this the appellant insists: 1st. That Copelly, sen., did not continue to possess the property in dispute, as owner, up to the time of sale to Defaucheur; and that the real and bona fide possessor was Rose Grondel, representing her son a minor, who claims under the act of donation, from Bony the first purchaser; to whom at least a feigned tradition had been made according to the law 8th, tit. 30, Part. 3, wherein it is stated, that “when one man gives another an estate, 8cc.fi and delivers to him the title he already has, or makes and delivers to him a new one, the donee will acquire possession of the thing, though it had not been delivered to him corporally. As to the first ground assumed by the appellant, its solidity depends entirely on the effect which ought to be given to the act of sale to Bony. If it operated a feigned delivery, then the dominion of the property passed from the vendor to him, and the former no longer possess *672 ed as owner, and could not give a valid title • to the subsequent buyer, by sale accompam-e(j with real tradition. The law, on which this feigned delivery is attempted to be based, seems, when taken in its full extent, to be somewhat inconsistent with the law first cited, relating to sales of the same thing, made to two persons, which gives a preference to the last purchaser, who has obtained possession. It the new title referred to in the former law be considered the act of sale, or donation by which the transfer of the property is made from the owner to the purchaser or donee; it would lead to this result, that in all cases of sale or donation, made and executed in writing, no delivery of the thing intended to be conveyed, w ould be necessary; the possession of the title, or act of sale being equivalent to actual and corporal possession; and would thus destroy the whole doctrine of law on the subject of tradition and dominion of property. The inconsistency would be less; if according to some of the doctors of the civil law, this feigned mode of acquiring possession, should be restricted to the delivery of the written instruments of the original right and title of the proprietor; or as suggested *673 by others, the expression in the law 8th, tit. 30, Part. 3, o faciendo otra de nuevo should be understood of a new title substituted for the old, which had been lost or destroyed. However, a contrary opinion seems to be holden by Gomez, in his commentary on the 45th law of Toro, n. 56 and 57.
It is perhaps true that a feigned delivery to a first purchaser gives him a preference over a second, to whom real tradition may have been made. See Gomez, var. resol. tit. de evictione el venditione.
Without attempting to reconcile and settle the differences between these doctors, we believe it may be safely laid down as a principle of self-evidence, that a person who claims the benefit of a fictitious act of tradition, in opposition to a real one, must bring himself completely within the lawr which sanctions such fictions.
It is necessary that the title should be delivered, whether new or old. In the present case there is no evidence that the act of sale to Bony was ever delivered to him, unless it be considered, that being executed before a notary public, is equivalent to delivering an act under private signature. The law makes *674 no distinction, and we ought not: a co- ... pía original (as termed by the Spanish law) c°uld have been easily obtained, and delivered in presence of the notary. We are therefore of opinion that the house and lot now in dispute, were never, either by act real or fictitious, delivered to Bony; that he never had possession of them, and consequently could have given none to Rose Grondel, the mother, or to the plaintiff, under his act of donation. We conclude, that Copelly possessed the premises in dispute, in virtue of his original title, until the period at which he sold to the warrantor of the defendant, who seems to have had possession under said sale, and to have sold and delivered to the appellee.
This view of the cause renders it unnecessary to investigate any matter which relates to the question of acceptance under an act of donation, according to the Spanish law.
Before concluding, it may not be improper to advert to a note in the translation of the Partidas, by Moreau & Carleton, on the law relating to the delivery of titles. This note refers to the case of Pierce vs. Curtis, in which the translators seem to consider the decision as contrary to the text. That case was decid *675 ed on rules of the Code, which establish the _ . _ , mode of fictitious delivery, by expressions to be used in the instrument of sale. Here, as in the present case, and as it should be in all similar cases, the fiction was limited to the strict words of the law.
it is therefore ordered, adjudged and decreed, that the judgment of the parish court be affirmed with costs.