WALL vs. HAMPTON & AL.

APPEAL from the court of the second district.

East'n District.
*April*, 1824.

WALL
*vs.*
HAMPTON &
AL.

MARTIN, J. delivered the opinion of the court. The plaintiff states she was sold in the year 1804 or 1805, in the state of Pennsylvania, to Turner, at whose death she passed into the hands of the defendants, who hold her in slavery, although her right to freedom has long ago attached—she prayed that she might be declared free, and the defendants condemned to pay her wages.

The defendants pleaded the general issue—that the plaintiff is a slave, and was sold as such for life, and not for a limited time,—they called their vendors in warranty.

These warrantors pleaded the same pleas as the original defendants.

The plaintiff, with leave, filed an amended petition, stating that a paper purporting to be a bill of sale of her from P. Neville, of Pennsylvania, to E. Turner, was not executed by said Neville, but was obtained through error, or fraud.

The following facts were submitted to a jury, by the plaintiff.

The supreme court cannot act, on evidence, taken down by the clerk, in a case in which he was not bound to take it.
If the petition has a charge of error and fraud —if the case be tried on special facts—if neither error and fraud is noticed in the facts submitted—both charges will be considered as abandoned.

VOL. II. (N. S.)    46

East'n District.
*April*, 1824.

WALL
*vs.*
HAMPTON &
AL.

1. Was not the plaintiff sold in Pennsylvania by P. Neville, to E. Turner, to serve for a term of years *only*, after which she was to be free?

2. Was it not stipulated that she should be free afterwards?

3. What was that time?

4. How old is she?

5. In what year was she sold?

The following facts were submitted by the defendants.

6. Was not the plaintiff sold by P. Neville, to Turner, by a bill of sale, dated March 15, 1802?

7. Was she not sold as a slave during her natural life.

8. Was not the title to the plaintiff, warranted by Neville to Turner?

The jury answered to the

1st fact, yes.

2d. yes.

3d. nine years.

4th. 45 or 50 years.

5th. in 1802.

6th, 7th, and 8th, no.

There was a judgment for the plaintiff, and for the defendants against the warrantors.

East'n District.
*April*, 1824.

WALL
*vs.*
HAMPTON &
AL.

The defendants and warrantors appealed.

The statement of facts shews, that

Mrs. Neville, the widow of P. Neville, deposed that some time in the year 1802, as well as she recollects, her husband sold to Turner a slave, named Sally Wall, for a term of years, not exceeding nine. It was especially agreed between the parties to the sale, and the person who was the subject of it, that provided the latter consented to go with the vendee, she should be a servant for a term of years, not exceeding nine. This was the stipulated condition, and the vendee paid for the woman and her child a price proportioned to this time of service. That many years ago, she heard P. Neville say that Sally was free, according to the terms of the sale.

Mrs. M'Carty deposed she has been living upwards of twenty-five years in P. Neville's family, that some time in 1802 he sold a slave named Sally Wall, to Turner for a term of years, not exceeding nine. This was the express condition of the sale, as she heard it, in the family of the vendor and that of the vendee, before he left Peynsylvania for Natchitoches.

M. Neville, the son of P. Neville, deposes

East'n District. that in 1802, his father sold to E. Turner, a
April, 1824.

WALL
vs.
HAMPTON &
AL.

negro woman named Sally, for a term of years not exceeding nine. He frequently heard it said, in his father's and the vendee's family, that Sally was only to be considered as a servant for a term of years, (long since expired,) and became the property of the vendee, on the express condition that she should be liberated at the expiration of the time. The price of the sale was proportioned to the period of servitude; she was no longer a slave after entering Turner's family. His father, at the time a considerable slave holder, disposed of several of them in this manner. He kept none as slaves for life, who accepted freedom. There is not any record in Pennsylvania of the sale. To the best of his recollection, Sally Wall was to remain as house or kitchen servant during her time of servitude. The feelings of the witness's father revolted at the idea of a woman's being compelled to perform field services, particularly in regard to sugar and cotton countries. In February or March 1807, he saw Sally, on Turner's plantation, on the Mississippi, and talked with her of the time when her service was to end, and she looked up to it with impatience. He is certain no document

was given her ; she relied entirely with confi-dence on Mr. Turner.

East'n District.
*April*, 1824.

WALL
*vs.*
HAMPTON &
AL.

The same witness being interrogated on the part of the warrantors, deposed that he has no knowledge of the plaintiff's child after she left Pennsylvania—he believes his father never sold any other slave to Turner, than the plaintiff and her child, and he believes if he had, he must have known it, and particularly he has no knowledge of his having sold Turner any other slave named Sally—that about the date of the sale, his father owned a negro servant, (not slave,) named Sally, be-sides the plaintiff, being of a different family ; she died on a farm of his father's, distant from Pittsburg about seven miles, about ten years ago—that he has no knowledge of the sale of the plaintiff to Turner being a written one, he believes it was merely oral, and for a term of years : it is probable a bill of sale may after-wards have been drawn at Turner's request, and drawn loosely, as his father was too much in the habit of transacting his business care-lessly.

N. Neville and Mrs. Macarty made the same answers.

East'n District.
*April*, 1824.

WALL
. vs.
HAMPTON &
AL.

Auguste Peytavin deposed he knew the plaintiff, and has known her since she came into the country with Turner. He has heard Turner and his wife say she was only to serve them for a term of years, and was to be free in a short time. She is now about fifty. At the the time of the sale in 1802, she was probabably worth from 800 to $1000. She was an uncommon good servant; her present value is from 600 to $800.

Maurice deposed she is now from 50 to 55. In 1802, she was worth from 800 to $1000, now $400.

It was admitted that the bill of sale is in Turner's hand-writing, and the blanks filled up by some other person.

A bill of exceptions was taken to the admission of evidence of Turner's declarations.

The depositions of M. and N. Neville, and Mrs. Macarty, were received; subject to exceptions of their irrelevancy or competency, as Neville's bill of sale is an absolute one, and the plaintiff sold as a slave for life.

The appellants first complain, that the district court erred in denying a new trial.

It was prayed on the ground of the several findings of the jury being contrary to evidence.

East'n District.
April, 1824.

WALL
vs.
HAMPTON &
AL.

There is no statement of facts made by the judge on the parties or their attornies—no certificate of the judge,—but only that of the clerk, that the transcript is a true copy of the record and exhibits in the case.

Special facts were submitted to the jury by each party—the case was not one in which, under the 18th section of the act of 1817, 32, the taking down of the evidence in open court during the trial, may dispense with a statement of facts, as required under the act of 1813. *Herman* vs. *Livingston*, 9 *Martin*, 674. We are therefore of opinion that we cannot act on the evidence, because as the clerk was not bound to take it down, nor any part thereof—we cannot conclude that he did take down the whole.

On the bill of exceptions we are of opinion, the parol evidence that the sale was not intended to be an absolute one, as the deed expresses, ought not to have been admitted. It is true the amended petition contains an allegation of error or fraud—but neither fraud or error were put in issue to the jury, and the allegation of them must be considered as abandoned, at least before them.

East'nDistrict.
*April*, 1824.

WALL
*vs.*
HAMPTON &
AL.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and the case remanded for a new trial, with directions to the judge, not to allow parol evidence to be given on these issues to disprove the contents of the deed, and it is further ordered, adjudged and decreed, that the plaintiff and appellee pay costs in this court.

*Workman* for the plaintiff, *Pierce* for the defendants.